IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

WILLIAM BUTLER,                 :
#199256                         :
        Plaintiff,              :
                                :
vs.                             :       CIVIL ACTION-12-331-CB-M
                                :
NATHANIEL DALE, et al.,         :
        Defendants.             :
                                :

REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se*
and *in forma pauperis*, filed a Complaint under 42 U.S.C. §
1983.  This action was referred to the undersigned pursuant
to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and
is now before the undersigned on Defendants Nathaniel Dale
and Reginald Grace's Motion for Summary Judgment and
Plaintiff's Response thereto (Doc. 26).

After consideration of the pleadings and the evidence
presented by the parties, and for the reasons stated below,
it is recommended that the Defendants' Motion for Summary
Judgment be granted, and that Plaintiff's action be
dismissed with prejudice.

I.   FACTS and PROCEEDINGS

Based on its review of the record, the Court summarizes the parties' allegations that are material to the issues addressed in this Report and Recommendation.

On October, 26, 2011, Plaintiff, an inmate at the Camden Community Based Facility, ("CCBF") was assigned to "fix cracks" on Highway 41 in Pineapple, Alabama with five Alabama Department of Transportation ("ALDOT") workers, "John Kerschier, Mark Thompson, [Defendant] A. Dale, Larry Jones and [Defendant] Reggie Grace."[1], [2] (Doc. 11 at 5). Plaintiff was responsible for holding a stop sign and advising traffic when to proceed through the work site. (Doc. 24-2 at 1).

Defendant Dale and Defendant Grace are employed by the Alabama Department of Transportation (ALDOT) as a supervisor of maintenance crews and a crew chief, respectively. (Doc. 24-1 at 1).

It is undisputed that when an ALDOT employee works with an inmate on a job, the employee has specific rules

---

[1] The Court is treating Plaintiff's Second Amended Complaint (Doc. 11 at 9) as an affidavit because it was signed under penalty of perjury. *Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992).

[2] ALDOT's certified work records reflect that Plaintiff's crew worked in Monroe County, Alabama, on Highway 83 at milepost 23.7 (Doc. 24-6 at 2). Plaintiff also admits in the sworn portion of his response that he was assigned to work along Highway 83 in Monroe County. (Doc. 26 at 2).

that he must follow. (Doc. 24-1 at 2). Specifically, he must not allow inmates into "any business or private building (house), or private vehicle at any time." (Doc. 24-4 at 2). Also, "[s]upervisors shall not allow inmates to be disrespectful or threaten them or other civilians, commit obscene acts, steal, talk back, make slurred remarks or horseplay, etc." (*Id.* at 4).

According to the Second Amended Complaint,[3] Plaintiff and the rest of the crew arrived at the job site around 8:45 a.m. It is undisputed that the area around the job site was clean and flat, and surrounded by pecan trees. (Doc. 24 at 3). Upon arriving, Plaintiff asked Defendant Grace if he could go to the restroom. (Doc. 11 at 5). Defendant Grace replied that "he had to call in to the office to ask the supervisor," Defendant Dale, about letting Plaintiff go to the restroom. (*Id.*). In the meantime, Defendant Grace told Plaintiff that he could "relieve himself in the cleared area next to the work site," but Plaintiff refused. (Docs. 24-2, 26 at 2, 9). Plaintiff then demanded that Defendant Grace take him to a restroom. (Doc. 24-2 at 2). Around 9:00 a.m., Plaintiff again asked Defendant Grace if he could use the restroom,

---

[3] The Second Amended Complaint before the Court supersedes the original Complaint and Amended Complaint. (Doc. 9).

but Defendant Grace said that he had not gotten in touch with the supervisor yet. (Doc. 11 at 5). At 10:00 a.m., Plaintiff asked again and Defendant Grace told him he "didn't know what to tell [him]," that he could go on private property, to which Plaintiff responded that he is not allowed to go on private property. (*Id.*). Having declined to relieve himself "in the bushes," Plaintiff was subsequently told by Defendant Grace that he could go down the "dirt road where the ALDOT vehicle" was parked; but, again, Plaintiff refused. (Doc. 24-2 at 2). Defendant Grace advised Plaintiff that he "could not take him to any business or private buildings for him to use the restroom." (*Id.*). Plaintiff was then taken to his designated area with the "stop [and] go flag" to begin working. (Doc. 11 at 5). Plaintiff asked to use the restroom "several more times" (*id.*), and, at 11:50 a.m., he defecated on himself. (*Id.* at 4). Plaintiff radioed to Defendant Grace what happened; Defendant Grace was instructed by Defendant Dale to quit the job and "return Butler and the other ALDOT employees to the District Office," where an incident report was filled out. (Docs. 11, 24-2 at 4, 2). Plaintiff was returned to CCBF by 1:09 p.m. (Doc. 11 at 4). The incident report states that, "[i]nmate Butler had a bowel movement on himself." (Doc. 24-3 at 2).

In his affidavit, Defendant Dale advised that
"[t]oilet tissue is provided for employees and inmates to
use the bathroom at the worksite because portable toilets
are not provided due to the worksite being a movable
operation and the temporary nature of the work," which has
not been controverted.  (Doc. 24-1 at 2).

In the Answer (Doc. 23) and Special Report, Defendants
Dale and Grace deny that they violated any of Plaintiff's
constitutional rights and assert *inter alia*, the defenses
of failure to state a claim and of qualified immunity.
(Docs. 23, 24 at 1, 2).

On October 31, 2012, the Court entered an Order
converting the Defendants' Answer and Special Report to a
Motion for Summary Judgment.  (Doc. 25).  On December 3,
2012, Plaintiff filed his Response to Defendants' Motion
for Summary Judgment.  (Doc. 26).

In Plaintiff's Second Amended Complaint, he makes
neither a request for damages or for any other relief, nor
does he allege any type of injury that he has suffered due
to this incident.  (Doc. 11 at 9).  However, in his
response to Defendants' Motion for Summary Judgment (Doc.
26), he asserts that he has "suffered cruel and unusual
punishment, negligent defamation, and endangerment of
health violations of the Eighth Amendment[,]" (*id.* at 1),

and seeks damages for "mental anguish and physical pain," (*id.* at 10), in the "sum of $500,000 and [injunctive relief to] require the State of Alabama to provide portable toilets for work crews."  (*Id.* at 2).

Defendants' Motion and Plaintiff's Response thereto are now before the Court.

## II.  SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with the following basic principles.  The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to the party who moves for summary judgment. FED.R.CIV.P. 56(a).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989).  However, Rule 56(e) states that:

> If a party fails to properly support an assertion of fact or fails to properly

> > address another party's assertion of fact as
> > required by Rule 56(c), the court may:
>
> > > (1) give an opportunity to properly
> > > support or address the fact;
> > > (2) consider the fact undisputed for
> > > purposes of the motion;
> > > (3) grant summary judgment if the
> > > motion and supporting materials—
> > > including the facts considered
> > > undisputed—show that the movant is
> > > entitled to it; or
> > > (4) issue any other appropriate order.

FED.R.CIV.P. 56(e). "[T]here is no issue for trial
unless there is sufficient evidence favoring the
nonmoving party for a jury to return a verdict for
that party. . . . If the evidence is merely colorable,
. . . or is not significantly probative, . . . summary
judgment may be granted." *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations
omitted). "Summary judgment is mandated where a party
fails to make a showing sufficient to establish the
existence of an element essential to that party's
case, and on which that party will bear the burden of
proof at trial." *Custom Mfg. and Eng'g, Inc. v.
Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir.
2007).

## III. DISCUSSION

As set forth above, Plaintiff seeks redress pursuant
to 42 U.S.C. § 1983 for defecating on himself on October

26, 2011, while he was holding the stop-and-go flag so ALDOT employees could repair the highway after his requests to use a restroom had been denied. (Docs. 11, 26). In his Second Amended Complaint, Plaintiff does not specify in what capacity he is suing Defendants (Doc. 11); however, in his response, he addresses Defendants' rights to qualified immunity in their individual capacities. Out of an abundance of caution, the Court will address both official and individual capacities.

In their official capacities, Defendants are entitled to absolute immunity from suit for damages. *See Harbert Int'l Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998). And, in regard to individual capacity claims, courts no longer are required to address qualified immunity from damages in the event that no constitutional violation is found, which is the situation in the present action. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action

at law, suit in equity, or other proper
proceeding for redress . . . .

42 U.S.C. § 1983 (1994).

Plaintiff complains he was deprived of his rights
under the Eighth Amendment, which provides that,
"[e]xcessive bail shall not be required, nor excessive
fines imposed, nor cruel and unusual punishments
inflicted." U.S. Const. amend. VIII. The Eighth
Amendment's proscription against cruel and unusual
punishment prohibits prison officials from exhibiting
"'deliberate indifference' to a substantial risk of serious
harm to an inmate." *Farmer v.* Brennan, 511 U.S. 825, 833
(1994). The Constitution does not mandate comfortable
prisons, but neither does it permit inhumane ones. *Id.* at
833.  If the State furnishes its prisoners with reasonably
adequate food, clothing, shelter, sanitation, medical care
and personal safety, so as to avoid the imposition of cruel
and unusual punishment, that ends its obligations under
Amendment Eight. *Newman v. Alabama*, 559 F.2d 283, 291 (5th
Cir. 1977) *rev'd in part sub nom. Alabama v. Pugh*, 438 U.S.
781 (1978). The Constitution does not require that
prisoners, as individuals or as a group, be provided with
any and every amenity which some person may think is needed

9

to avoid mental, physical, and emotional deterioration.
*Id.*

Thus, "to survive summary judgment on [a] § 1983,
Eighth Amendment claim, [an inmate is] required to produce
sufficient evidence of (1) a substantial risk of serious
harm; (2) the defendants' deliberate indifference to that
risk; and (3) causation." *Hale v. Tallapoosa Cnty.*, 50
F.3d 1579, 1582 (11th Cir. 1995).

An Eighth Amendment inhumane conditions of confinement
claim requires an inmate to satisfy an objective component
and subjective component. *Farmer*, 511 U.S. at 836.  The
objective component requires the Court to look to
"contemporary standards of decency" to determine whether
the challenged condition resulted in a deprivation of "the
minimal civilized measure of life's necessities." *Rhodes*
*v. Chapman*, 452 U.S. 337, 347 (1981).  Moreover, the
challenged condition must be "extreme . . . [b]ecause
routine discomfort is part of the penalty that criminal
offenders pay for their offenses against society, only
those deprivations denying the minimal civilized measure of
life's necessities are sufficiently grave to form the basis
of an Eighth Amendment violation." *Hudson v. McMillian*,
503 U.S. 1, 9 (1992) (citations and quotation marks
omitted); *see Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th

10

Cir. 2004)([i]f prison conditions are merely restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.").  To be extreme, the challenged prison condition must "pose[] an unreasonable risk of serious damage to the prisoner's health or safety."  *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010).

In a prison conditions case, the required state of mind for a defendant is "deliberate indifference" to an inmate's health or safety.  *Farmer*, 511 U.S. at 834 (citations omitted).  In defining "deliberate indifference," the Supreme Court in *Farmer* stated:

> We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.  "The known risk of injury must be a strong likelihood, rather than a mere possibility before a [state employee's] failure to act can constitute deliberate indifference."  *Dobbins v. Giles*, 2011 WL 979214, at *5 (M.D.Ala. Feb. 28, 2011)(citations and quotation marks omitted).

1.  Eighth Amendment Claim Against Defendant Grace[4]

With respect to an Eighth Amendment claim against Defendant Grace for denial of access to a restroom, Plaintiff's claim fails as a matter of law.  It is incumbent on Plaintiff to show that the denial of access to a restroom, which caused him to defecate on himself, resulted in the deprivation of "the minimal civilized measure of life's necessities."  Plaintiff's facts fail to show this type of deprivation, which is necessary to establish an Eighth Amendment violation.  *Hudson,* 503 U.S. at 9.

Plaintiff has never disputed that he was given opportunities to relieve himself and that he was informed of the viable alternatives available, such as 'reliev[ing] himself in the cleared area next to the worksite," or "down the dirt road" where the ALDOT vehicle was parked if he didn't want to relieve himself "in the bushes."  (Doc. 24-2

---

[4] In Plaintiff's response to the summary judgment, he states that he suffered "cruel and unusual punishment" and "endangerment of health violations of the Eighth Amendment of the United States Constitution." (Doc. 26 at 1).  The Court is treating these statements as seeking review of his facts under the Eighth Amendment because no other details are given concerning "health violations."  Plaintiff even identifies this action as one for an Eighth Amendment violation.  (Doc. 26 at 5, 10).

at 2).  Instead, he chose not to relieve himself where he
was told and insisted on having access to a restroom.
Plaintiff does not dispute the fact that toilet tissue was
available for his use.[5]  Neither has Plaintiff identified a
medical condition involved with him relieving himself, nor
has he identified a physical injury that he sustained as a
result of defecating on himself.

Plaintiff argues in the unsworn portion of his
response, that, if he relieved himself at the worksite,
that he would get in "deeper trouble with local police"
because he would be "exposing [his] genitals to the

_____

[5]    The Second Amended Complaint frames the claims in this
action. The single claim raised in the Second Amended
Complaint alleges a violation of the Eighth Amendment by
Defendants.  The words "equal protection" do not appear
*anywhere* in the complaint.  *GJR Invs., Inc. v. Cnty. of
Escambia, Fla.,* 132 F.3d 1359, 1367 n.9, 10 (11th Cir.
1998)(emphasis in original) *overruled on other grounds by
Ashcroft v. Iqbal*, 556 U.S. 662 (2009).
       Nevertheless, in his response to the Summary Judgment
Motion, Plaintiff argues in the unsworn portion of his
response that inmates were not provided with the same
opportunity as ALDOT employees to use the bathroom.  (Doc.
26 at 8-9).  This argument appears to be directed to an
equal protection claim, which Plaintiff did not raise in
his Second Amended Complaint.  And, based on the evidence
before the Court, Plaintiff would not be able to establish
an equal protection claim because he has failed to show
that he is similarly situated to the other person who
received the more favorable treatment, i.e., a non-
prisoner.  *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir.
2001)("To establish an equal protection claim, a prisoner
must demonstrate that (1) he is similarly situated with
other *prisoners* who received more favorable treatment; and
(2) his discriminatory treatment was based on some
constitutionally protected interest such as race.").

public." (Doc. 26 at 8).  However, this argument appears
speculative given that there has been no evidence presented
that a police presence was monitoring the job site on
October 26, 2011.  Further, Monroe County is considered to
be a rural area of the State of Alabama,[6] which would not
require Plaintiff to "expose himself to the public" if he
had relieved himself in the manner he was told.  Lastly,
there is no evidence as to who the "public" is.  Other than
the five ALDOT employees and one other inmate (Docs. 11,
24-6 at 5, 2), there is no evidence that any one else was
around to be "exposed" to Plaintiff as he relieved himself.

Other courts that have considered an inmate's
temporary deprivation of access to a restroom have found
that the lack of access did not amount to the deprivation
of the "minimal civilized measures of life's necessities."
*Patin v. LeBlanc*, 2012 WL 3109402, at *15-*16 (E.D.La.
2012)(holing as frivolous an inmate's claim that the
limited scheduled bathroom breaks for access to the
bathroom facilities were too far apart while they were
outside working or waiting which caused the inmates to

---

[6] According to www.city-data.com, Monroe County, Alabama is
78% rural and only 22% urban.  It is 1,026 square miles
total, with a population of 22,987 people as of 2011, which
breaks down to 22 people per square mile.
http://www.city-data.com/county/Monroe_County-AL.html (last
visited March 6, 2012).

relieve themselves outdoors); *Whitted v. Lazerson*, 1998 WL
259929 (S.D.N.Y. May 21, 1998)(holding that the inmate
failed to meet the objective element of an Eighth Amendment
Claim as there was no injury when he was deprived of a
toilet for 90 minutes which caused him to relieve himself
in his pants); *Smith v. Boyd*, 2012 WL 3230646, at *9
(M.D.Ala. July 5, 2012)(holding that the Eighth Amendment
was not violated when an inmate was denied access to a
restroom for several hours while a search was being
conducted inasmuch as no injury was suffered); *see also
Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir.
2004)(finding that the Eighth Amendment was not violated
when an involuntarily committed mental patient urinated on
himself because "the momentary deprivation of the right to
use the bathroom in the absence of physical harm or serious
risk of contamination, does not rise to the level of an
Eighth Amendment violation."). "[T]he mere fact that
bathroom access is limited or even results in inmates'
soiling themselves, does not necessarily amount to a
constitutional deprivation: The fact that inmates may
occasionally soil themselves while attending their bodily
functions does not automatically mean that they have been
subjected to inhumane conditions." *Patin*, 2012 WL at *16

15

(quoting *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998).

"A plaintiff seeking to show unconstitutional conditions of confinement must clear a 'high bar' by demonstrating 'extreme deprivations.'" *Ellis v. Pierce Cnty., Ga.*, 415 F.App'x 215, 217 (11th Cir. 2011)(citation omitted)(unpublished).[7] An extreme condition "created an unreasonable risk- one that society chooses not to tolerate- of 'serious damages[s] to [the detainee's]] future health' or safety." *Id. quoting Hudson v. McMillian*, 503 U.S. 1 (1992)(internal quotation marks omitted).

In the present action, Plaintiff has not shown an extreme condition so as to deprive him of the "minimal civilized measures of life's necessities." No deprivation of a single human need has occurred. *See Jordan v. Doe*, 38 F.3d 1559, 1565 (11th Cir. 1994)(to violate the Constitution, the deprivation "must, at a minimum, have deprived [the inmate] 'of a single human need.'")(citation and internal quotation marks omitted). The Court observes that there are many situations where a restroom is not

---

[7] "Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority." Lanier Const., Inc. v. Carbone Properties of Mobile, LLC, 253 F.App'x 861, 865 n.5 (11th Cir. 2007).

available and persons such as soldiers, hunters, campers, people traveling, etc., avail themselves of other means for eliminating excrement.  However, Plaintiff chose to not relieve himself, although given the opportunity, for the mere three hours and five minutes that he was on the job site.  (Doc. 11 at 4-5).  Furthermore, once Plaintiff soiled himself at 11:50 a.m., he was returned in short order to ALDOT's office and to CCBF by 1:09 p.m.  (Docs. 11, 24-1 at 4-5, 2).  Accordingly, the Court finds that Plaintiff has failed to establish the objective element of an Eighth Amendment claim- a substantial risk of serious harm.

Second, Defendant Grace did not act with deliberate indifference, which is necessary to meet the subjective component of an Eighth Amendment claim.  Defendant Grace did not deny Plaintiff his right to relieve himself; he just advised Plaintiff to do so in locations that were not a restroom facility, which Plaintiff did not want to do.  Furthermore, Plaintiff did not inform Defendant Grace of any medical condition that he had that would be affected by such a decision.  Thus, the facts do not reflect that Defendant Grace was deliberately indifferent to Plaintiff's need to relieve himself.  Accordingly, the Court concludes

that there has not been an Eighth Amendment violation by
Defendant Grace.

### 2. Defendant Dale

In addition to Defendant Grace, Plaintiff names
Nathaniel Dale as a Defendant; however, Plaintiff does not
identify how Defendant Dale injured him or what actions
Defendant Dale took.  The majority of the allegations are
directed to Defendant Grace (Doc. 11).  Because Plaintiff
fails to allege any specific act taken by Defendant Dale
against him, it appears that Plaintiff is traveling under
the theory of *respondeat superior.*

In order to state a claim against Defendant Dale,
Plaintiff must establish a causal connection between
Defendant Dale's actions, orders, customs, and policies,
and the deprivation of his constitutional rights.  *Zatler
v. Wainwright,* 802 F.2d 397, 401 (11th Cir. 1986).  "[T]he
inquiry into causation must be a directed one, focusing on
the duties and responsibilities of each of the individual
defendants whose acts or omissions are alleged to have
resulted in a constitutional deprivation."  *Id.* However,
"[i]t is well established in this Circuit that supervisory
officials are not liable under § 1983 for the
unconstitutional acts of their subordinates on the basis of
*respondeat superior* or vicarious liability."  *Cottone v.*

18

*Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citations omitted).  "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation."  *Id.*

"[T]he causal connection may be established when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  *Id.* (citations and quotation marks omitted).  "The standard by which a supervisor is liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Id.* (citation omitted).

Plaintiff's facts do not show that Defendant Dale was connected through personal involvement or through a custom or policy under which Plaintiff was denied the use of a restroom.  In fact, there is no connection to Plaintiff's claim on Defendant Dale's part except that Defendant Grace called him only because he was Defendant Grace's supervisor. Simply stated, Plaintiff has failed to state a

claim against Defendant Dale, and therefore, Defendant Dale is entitled to summary judgment in his favor.

### Negligent Defamation

Plaintiff alleges "negligent defamation" in his response.  (Doc. 26 at 1).  There are no allegations to support such a claim in his Second Amended Complaint. Moreover, negligence does not form a basis for a recovery in a § 1983 action, *Daniels v. Williams*, 474 U.S. 327, 332 (1986), and defamation does not violate the constitution. *Paul v. Davis*, 424 U.S. 693, 712 (1976) (any interest in one's reputation is protected by a state's tort law.). Accordingly, the Court finds that this claim is frivolous.

### 42 U.S.C. § 1997e(e)

An alternative basis for granting Defendants' Motion for Summary Judgment is 42 U.S.C. § 1997e(e), which is entitled "Limitation on recovery" and provides: "No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility for emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  This section prevents the recovery of compensatory and punitive damages by an inmate when no physical injury is alleged.  *Al-Amin v. Smith*, 637 F.3d 1192, 1198 (11th Cir. 2011).

In the Second Amended Complaint, Plaintiff requested no relief. (Doc. 11 at 9). It is only in his response that he requested "compensation and injunctive relief: A sum of $50,000 and require [sic] the State of Alabama to provide portable toilets for work crews." (Doc. 26 at 1-2). It appears that the request for "compensation" may be a request for compensatory damages, but Plaintiff states it is for punitive damages (Doc. 26 at 5); however, in order for a prisoner to recover compensatory or punitive damages, he must show that he has suffered a physical injury. *Al-Amin*, 637 F.3d at 1198. Plaintiff has made no showing of a physical injury that he has suffered as a result of defecating on himself. Thus, § 1997e(e) bars Plaintiff from recovering compensatory and punitive damages. *Patin v. LeBlanc*, 2012 WL 3109402, at *1, *8 (E.D.La. May 18, 2012)(finding that the plaintiff did not suffer a physical injury when, *inter alia*, inmates were forced to urinate and defecate outside due to the dorms being opened only ten minutes every hour from 8:00 a.m. to 10:15 a.m. and from 1:00 p.m. to 3:15 p.m. for bathroom breaks).

Turning to the request for injunctive relief in the response (Doc. 26 at 1-2), § 1997e(e) does not preclude requests for injunctive relief. *Al-Amin*, 637 F.3d at 1197. However, in order to be granted a permanent injunction, the

21

party must demonstrate that: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Thomas v. Bryant*, 614 F.3d 1288, 1317-18 (11th Cir. 2010)(citing *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006)); *Ala. v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1128 (11th Cir. 2005). In addition to ensuring that injunctive relief was necessary under this standard, we must also ensure that the scope of the awarded relief does not exceed the identified harm. *Thomas* at 1317-18 (citing *Califano v. Yamaski*, 442 U.S. 682, 702 (1979)(stating that "the scope of injunctive relief is dictated by the extent of the violation established . . . ."); *LaMarca v. Turner*, 995 F.2d 1526, 1543 (11th Cir. 1993)("While district courts have broad discretion to fashion equitable relief, such relief must target the existing wrong.")). In the context of prison litigation, we must also consider the requirements of the Prison Litigation Reform Act, 18 U.S.C. § 3626 ("PLRA"), which establishes standards for the entry and termination of prospective relief in civil actions challenging prison

conditions." *Thomas* at 1318 (citing *Miller v. French*, 530
U.S. 327, 331 (2000)).  "The PLRA mandates that injunctive
relief is only appropriate where it is 'narrowly drawn,
extends no further than necessary to correct the violation
of the Federal right, and is the least intrusive means
necessary to correct the violation of the Federal right.'"
*Thomas* at 1318 (citing 18 U.S.C. § 3626(a)(1)(A)).

In the present case, there is no showing that
irreparable harm will be suffered if "portable toilets for
the work crew" are not provided.  No injury has been
specifically identified, nor has an injury been described
as being irreparable.  Furthermore, Plaintiff is no longer
incarcerated at CCBF, as he has given the Court an address
for Decatur Work Release/Work Center.  (Doc. 11). Moreover,
Plaintiff has not advised the Court of the type of work he
is now performing at this different location or shown a
"real or immediate threat that [Plaintiff] will be wronged
again." *Thomas* at 1318.  Therefore, the Court concludes
that Plaintiff's request for injunctive relief is moot.
*See Mann v. McNeil*, 360 F.App'x 31, at *32 (11th Cir.
2010)(finding that the "transfer or release of a prisoner
from prison will moot that prisoner's claims for injunctive
and declaratory relief.").  Inasmuch as Plaintiff has not
satisfied one of the elements for granting injunctive

relief- irreparable harm- and is no longer subject to the conditions of which he complained, the Court finds that his claim for injunctive relief fails to state a claim upon which relief can be granted.  Accordingly, Plaintiff's action is due to be dismissed because it is precluded under 42 U.S.C. § 1997e(e).

For the reasons set out above, this Court concludes that Defendants Dale and Grace are entitled to Summary Judgment in their favor on all claims asserted against them by Plaintiff.  Accordingly, it is recommended that Defendants' Motion for Summary Judgment be granted, that this action be dismissed with prejudice, and that judgment be entered in favor of Defendants and against Plaintiff on all claims.

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.  *Objection.*  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

A party may object to a recommendation entered by
a magistrate judge in a dispositive matter, that
is, a matter excepted by 28 U.S.C. §
636(b)(1)(A), by filing a "Statement of Objection
to Magistrate Judge's Recommendation" within ten
days[8] after being served with a copy of the
recommendation, unless a different time is
established by order.  The statement of objection
shall specify those portions of the
recommendation to which objection is made and the
basis for the objection.  The objecting party
shall submit to the district judge, at the time
of filing the objection, a brief setting forth
the party's arguments that the magistrate judge=s
recommendation should be reviewed *de novo* and a
different disposition made.  It is insufficient
to submit only a copy of the original brief
submitted to the magistrate judge, although a
copy of the original brief may be submitted or
referred to and incorporated into the brief in
support of the objection.  Failure to submit a
brief in support of the objection may be deemed
an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed
to a Court of Appeals; only the district judge's order or
judgment can be appealed.

2.     ***Transcript (applicable Where Proceedings Tape
Recorded)***.  Pursuant to 28 U.S.C. § 1915 and FED. R. CIV.
P. 72(b), the Magistrate Judge finds that the tapes and
original records in this case are adequate for purposes of
review.  Any party planning to object to this
recommendation, but unable to pay the fee for a transcript,
is advised that a judicial determination that transcription
is necessary is required before the United States will pay
the cost of the transcript.

DONE this 11th day of March, 2013.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE

---

[8] Effective December 1, 2009, the time for filing
written objections was extended to "14 days after being
served with a copy of the recommended disposition[.]"  *Fed.
R. Civ. P.* 72(b)(2).